Mr. Rella, is that how you pronounce it? Good afternoon, your honors. May it please the court. I wonder if this case isn't somewhat simpler than the government makes it out to be. And let me tell you why I think that. Okay. At the time that your client entered into his employment contract, the statute provided for conservatorship of institutions that were insolvent. And as a general matter, when you go into conservatorship, as in bankruptcy, contracts can be repudiated, giving rise to a breach of contract cause of action that can be asserted against the estate in conservatorship. Correct? That may be correct, your honor. As a general matter, here, however, while there was the authority at the time that Mr. Pezel entered into his employment agreement for Ofeo to place Freddie Mac into a conservatorship, there was no express power once Freddie Mac was in a conservatorship for Ofeo to repudiate contracts. Okay. Well, it's true that there's no express provision in the contract, but I think that's in the nature of conservatorship. So let's at least assume for the moment that there was a general repudiation power. And under those circumstances, there was a breach of contract claim. And so how can there be a takings claim if the breach of contract claim against the estate was preserved? Well, so there would be two separate claims, right, if you have a breach of contract claim and a takings claim against the government specifically. Here, the government was explicitly acting as regulator, not conservator. Yeah, but wait, do you agree that the Belden parachute provision didn't eliminate your client's breach of contract claim? I think that's right, Your Honor. Okay. So why, if that breach of contract claim was preserved, is there a taking here? I mean, there are plenty of cases that say that the fact that the government breaches a contract doesn't lead to a takings claim, it leads to a breach claim. I think that's right, Your Honor, but that is in the specific context where the government is the counterparty here to the contract. That's not the case here. So Freddie Mac was the counterparty. The government ordered Freddie Mac to terminate Mr. Peisel. So while Mr. Peisel may have a standard breach of contract claim against Freddie Mac as an institution, the government here was acting as a regulator, not as a contractual counterparty, and therefore Mr. Peisel would also have a Fifth Amendment takings claim against the government. I'm not following that. The breach of contract claim is preserved. So why isn't that preserving his remedy? What's been taken here? How has he been injured? Well, he's been injured, Your Honor, because he hasn't received any of the termination benefits to which he was entitled, and that was only because the government ordered Freddie Mac not to pay them. What Judge Dyke is getting to, if I might add, is how has he been injured in a taking sense? In other words, what has been taken from him? I mean, when I picked up the briefs in this, I said, basically, Freddie Mac was ordered to terminate him without cause, and number two, not to give him his termination benefits. I think breach of contract. And I'm trying to think where has there been anything taken. No contract right has been taken because, as the colloquy you've had with Judge Dyke suggests, he has the right to a breach of contract claim. What has been taken here? Well, again, what I would say is, I mean, so there are two separate claims here, right? And if you look at, there are certain cases that we cite in our brief where the government authorizes a third party to take a contractual interest, and that leads to a takings claim. And so it's not, again, I'm not saying that there is no separate claim against Freddie Mac for breach of contract, but at the same time, the government is responsible here. If we sued Freddie Mac, you would bet that Freddie Mac would point his finger at the government and say, we were ordered to do it by the government. We had to terminate Mr. Feisal, go after the government. And so while there may be a separate breach of contract. He was terminated by the conservator here, right, which was the government. He was terminated by FEFA acting as a regulator, not as conservator here. That's why our takings claim here has nothing to do with the imposition of the conservatorship. Well, suppose it were taken, suppose we consider this to have been an action to have been taken by the conservator. Okay. Is there a takings claim? I think there still is because the government didn't have that power to take Mr. Feisal's termination benefits, even as conservator at the time when Mr. Feisal. Well, how has it taken them? It's preserved his breach of contract claim, which he can assert against the estate. He could assert that as a separate claim, as a separate breach of contract claim. But a breach of contract claim does not preclude a separate takings claim against the government. There's two separate defendants in two separate cases with two different remedies. And so here, again, while he could potentially sue Freddie Mac for breach of contract, that would do no good because Freddie Mac would point at the government and say the government ordered us to do it. And when the government, and this is in the Loretto case, when the government in that case just authorized a third party to take a property interest, here the government can just authorize it. It ordered. You mean there would be a sovereign acts defense or an impossibility defense? I'm sorry, Your Honor? There would be an impossibility defense? That's potentially a defense that Freddie Mac could assert. We could not comply with a contractual. I don't think under Winstar that that defense would be available. Well, under Winstar, again, Winstar dealt with the government acting as a contractual counterpart. The government contracted with the plaintiffs, the thrifts in those cases, to provide that. You can count certain capital towards your goodwill. Let's simplify this. Let's assume that we construe the golden parachute provision as saying you can't pay the golden parachute, but you still have a breach of contract claim. Let's assume that. And without a defense of impossibility or sovereign acts or whatever. They're not trying to create a defense to a breach of contract claim. Why do you have a takings claim if that's the case? Because the underlying breach of contract is because of the government's directive. And here, we're not aware of any case law that precludes a party from asserting a takings claim just because it may also have a breach of contract claim. Now, again, where the government is accountable. But the taking you're describing is a taking of contract rights. And if you can enforce those contract rights for a breach of contract, why is that a taking? Well, because you don't have to enforce the action against Freddie Mac here. We effectively had a choice. We could sue Freddie Mac. We could sue the government. We could sue both. I'm not saying we could have a double recovery. I don't think that's the case at all. Did you file a breach of contract action? We did not. Why not? Well, again, the anticipation here was you go after Freddie Mac, and Freddie Mac points the finger at the government, and then we're in a jurisdiction where we can't sue the government. We'd have to come to the Court of Claims to sue the government here on a takings claim. So we thought at the end of the day it would just be a longer way of pursuing. Where would a suit against Freddie Mac have been brought? Not in the Court of Claims. In a different district court perhaps in Virginia where Freddie Mac is located. But obviously in Virginia we would not have been able to bring a takings claim against the government. So at the end of the day, the way we looked at this, our hands are effectively tied. The government ordered Freddie Mac to do something. Freddie Mac complied. Put Mr. Peisel out on the street, which had a devastating personal and professional impact on him that continues until today. And it's because of the government. So what case says that you can forego a breach of contract claim and sue the government instead on a takings claim? That seems extremely odd. Your Honor, in the briefs below at the lower court level in the Court of Claims, the government raised this argument. The government said that Mr. Peisel has a breach of contract claim against Freddie Mac, and therefore he effectively waives his takings claim. And we cited to plenty authority in our lower court brief saying that's not the case. What do you mean that's not the case? It's not the case that a breach of contract claim precludes a takings claim against the government. There's no law saying that. Well, what case says that if you preserve the breach of contract claim when you order the severance payments not to be made, that there's a takings claim? I mean, there are plenty of cases, Bailey and so on and so forth, that say that if you preserve the breach of contract remedy, there's been no taking. Why isn't that line of cases applicable here? Well, again, and first of all, this is an argument the government waived. It didn't raise it here. But I think with the relevant cases you're addressing— Yeah, but I don't think the government can force us into addressing its grand theory when there's a narrower reason to decide the case, not narrow ground. I think what the relevant cases say, Your Honor, is if the government is acting as a contractual counterparty to a plaintiff and terminates that contract, the government is no longer acting as sovereign. When the government enters into a contract with a private party, it's no longer acting as sovereign. It's acting as a private party. You can sue the government for a breach of contract claim, which you normally can't do. Here, the government was not the counterparty here. Mr. Peisel has no contract with the government. Its contractual counterparty is Freddie Mac. So the only way it goes after the government, and here, again, we think that's really the party that's responsible because it issued this directive, is by asserting a takings claim. But what case supports the notion the government tells somebody to terminate a contract but preserves the breach of contract remedy, that there's been a taking? Well, I would assert, Your Honor, there's no case precluding that. Again, we dealt with this issue— So you have no case that says that that's a taking? Well, Your Honor, on this appeal, again, this is not an issue we briefed and we addressed only because it wasn't raised by the government. But, again, I can tell you that the government did assert the argument below that the breach of contract claim precluded the takings claim. We cited cases saying that's not the case. It may be the case where the government is the contractual counterparty, but not where the government— What's the case that comes out the other way?  I'm sorry, Your Honor? If you cited cases down below, what are those cases? I think one is called the Sun Galaxy case. Another one, I believe, Your Honor, is a Hughes case. And, again, I'm citing these from memory in our briefing below. But these cases stand for the general proposition that you can't sue the government for a taking where it's acting as a contractual counterparty. It's not a sovereign. Your remedy is a breach of contract. But there's no case of saying when the government is acting as a sovereign, directing a third party to effectively breach a contract, that you can't sue the government. So there's no case one way or the other, is your view? I don't think there's any case that I can recall, Your Honor, that precludes going after the government. No case one way or the other? As far as I can recall right now, Your Honor, that's correct. This is not an issue that we brushed up on for this appeal because it's not an issue here today. Well, but it is an issue in the sense, though, there are two issues that we have to decide. Is there a cognizable property interest, number one, and assuming there is, has that property interest been taken? Correct. And it seems to me that that second inquiry gets us squarely into the issue that we've been discussing here with you today. Was there a taking? And I come back to what I said, and I think what Judge Dyke has been saying with you, that it seemed to me that the contract right, namely the right to sue for breach of contract, wasn't taken. Now you, and correct me if I'm wrong, you seem to be saying that an action for breach of contract was not brought, not because you didn't think it was there, but rather because looking at the law, you felt it would not be successful. There would be an insurmountable defense by Freddie Mac. Is that correct? That's correct. We thought the most effective means here was to sue the government who ordered the taking, ordered Freddie Mac to terminate the contract. And again, we foresaw Freddie Mac pointing at the government. So again, if we believe here— That doesn't mean that the cause of action for a breach of contract isn't there. That's correct. It means that Freddie Mac has a defense which you're going to have to work to overcome. That's correct, but it also doesn't mean that we don't have a separate claim against the government.  There we get into the question, has there been anything taken? And it seems to me the validity of a claim against the government, assuming there's a cognizable property interest, turns on whether something's been taken. And if the right to sue for breach of contract remains, no matter how difficult you think it might be to assert, that right remains so nothing's been taken. Well, it is a right. You have a breach of contract right. But that doesn't mean that there's no taking, right? It just means that there is a separate counterparty with a separate claim. But there has to be something taken. Right, and we would assert that here the contractual termination benefits were taken. What did you lose? What did your client lose? He lost a lump sum payment he was entitled to when he was terminated. If he still has a breach claim, he hasn't lost it. I mean, it seems like you're saying what was taken was his right to receive these automatically without going through a breach of contract claim. But these are all still, he's entitled to these by contract. So the right is a contract right. And if you still have a contract right to sue for a breach of contract, then what was taken? Well, again, Your Honor, in terms of the authority, as I can recall it, there would be no taking this claim if the government was the counterparty. Right there, we would have to assert a breach of contract claim. But just because there's a private breach of contract claim doesn't matter if the government was a party or not. If we're looking at the property right, did any action of the government take that property right? Or did it simply cancel it but still preserve his right to enforce it through a breach of contract action? What I would say to that, Your Honor, is just because – If they had said cancel these benefits and he can't sue for breach of contract, that seems to be a taking, but they didn't go that far. Well, but, I mean, there is a wealth of authority saying that taking a contractual interest is a property interest. That is a taking. There is plenty of authority saying that. But the cases say that if you cause a breach of contract but preserve the contractual remedy, nothing's been taken. Well, again, Your Honor, what I would say is there is nothing as far as we've seen, and we briefed this below, saying that when you have breach of contract action against a private party that precludes a takings action against the government, there's simply no authority on that. The government expressed they made a decision not to raise that argument here before the appellate court, and therefore I would argue that it's waived, and it chose not to raise the argument. Well, they may have waived it in some sense, but that doesn't mean that we can't address it as a narrower ground for resolving this case. Your Honor, if that's what the court would like to do, again, I would just assert that it's not in their briefs. They didn't raise it. It's not an issue here today. Well, we may give you the opportunity to do supplemental briefing on this. Understood, Your Honor. All right. And we would welcome that opportunity. Okay. So we're out of time, but we'll give you two minutes for rebuttal. Thank you. Mr. Harrington? May it please the Court. I'm going to take a slightly different avenue in light of the questions that Mitch was posing than I had originally thought, but let me run through my introduction first. Well, let's get right to the heart of it. Does the Golden Parachute provision eliminate the breach of contract record? No, it does not. Okay. And, in fact, as counsel mentioned, we argued to the trial court, and you can see a reference to it in the trial court's decision, that what Mr. Pazell should have done as an initial matter was to sue Freddie Mac for breach of contract if he got a recovery, well, he would get whatever recovery the law provided, and that there would be no taking. We argued that below. That argument was rejected, and on appeal, the arguments in our brief are what you have seen. And those arguments are that Mr. Pazell in 2003 Would the HERA, I guess it's called, was enacted before he was terminated, if I recall correctly. And HERA limits recovery for a breach of contract claim to compensatory damages. And if that's the case, is that provision retroactive, so that his breach of contract suit would be limited to compensatory damages? Your Honor, that provision would apply to the conservatorship. That was the provision that was in place when the conservatorship was imposed in 2008. So, yes, that is the applicable law as to all claims in the conservatorship as it was imposed by FHFA. Okay, but there's a bit of a problem here because there's a provision in the FDIC statute which is similar to this, and there's been a lot of law interpreting that, decisions of I think six circuits, as to whether a claim for expectancy damages is barred by that or not barred by that. Does the government have a position as to whether the limit to compensatory damages bars a claim for termination benefits? That is something that we did not address in our briefs, and no, I do not have a position as I stand here today, Your Honor. Okay. Touching briefly on the issues that we did raise in our briefs, recognizing that the court has identified another possible avenue for it. I mean, do you agree that, I mean, there was a conservatorship provision before this gentleman entered into his contract, right? Absolutely. Right, and do you agree that under, and it's a very bare bones statute. It didn't spell out a lot of these things. Do you agree that the conservator under that provision had a right to repudiate the contract? I believe that's correct, Your Honor. Under the Safety and Soundness Act, which was in place when Mr. Pazell joined Freddie Mac, there was provision in that for a conservatorship, and I believe for the very sort of repudiation that we're talking about. I'd want to go back to, I have not directly compared and put side by side the two conservatorship provisions, but without question, that conservatorship provision was there before Mr. Pazell joined. So we could expect that if it went into conservatorship, he might have been terminated. Yes. Yes. And so in that sense, you know, it did not affect his investment-backed expectations. And also, the one other factor about Penn Central, if you're talking about, and I'm jumping over the whole property interest claim question here, jumping straight to a Penn Central analysis. One other aspect of the Penn Central analysis is economic impact, of course. And this court has held recently, in fact, in the A&D decision, that if you don't show an economic impact, there can be no taking. Here, if there is a remedy through contract, there can be no economic impact, and therefore there cannot on the merits, assuming that you have a property interest, there can be no taking. Does the fact that the government's direction to repudiate these benefits came as a regulator versus as the conservator make any difference to whether he lost his property, i.e. the breach of contract claim? Your Honor, I don't believe. Well, one of the things we said below is that you should bring your breach of contract to see how it plays out. So one of the things we're disadvantaged by here is he didn't do that, and so we don't know how that would have been resolved. But there's no reason to believe that the action as regulator or the action as conservator affects the amount that could be recovered as a breach of contract remedy. And there's no question, Mr. Henry, that the time for a breach of contract suit has passed, is what you're saying? That has passed, Your Honor. Yes, it has. Your Honor, we also believe that there is no property right here for the reasons that we explained in our briefs. We believe that if you were to reach the takings claim, that apart from the property interest question, there were several independent grounds for dismissing it. You know, the pervasive regulation of Freddie Mac, the fact that there was no appropriation of the contract by the United States, and the fact that Mr. Bozell had no investment expectation. That was frustrating. And you would say there was no appropriation of the contract because of the fact that what we have is a direction to terminate number one and number two, not pay the termination benefits, but the right to sue for breach remained. That's correct. So that's why you'd say there was no taking of the contract in the Fifth Amendment sense. That's correct. I mean, it was in some ways very closely akin to the Supreme Court's Omnia decision, where the government there directed a party not to perform a contract because it wanted to steal. That was the subject of that contract. Of course, Omnia didn't get into whether, I guess, Omnia could have sued Allegheny. There is no discussion, and I have no idea what the history of that would have been. That was beyond the Supreme Court's decision. But as far as the takings aspect goes, putting that aside, the directive was very similar to the directive that we're talking here. There was a directive not to perform a private party contract between two nongovernmental entities. And at least in the context of Omnia, that was found not to be a taking. Here, as the Court has said, the situation is, if anything, even stronger because Mr. Pazell had a contractual opportunity to sue for breach of contract. It's a pretty broad theory, and there are other Supreme Court cases that call into question the breadth of that theory. There are certainly some cases from this Court that have gone both ways in applying Omnia, Your Honor. Palmyra Pacific applied Omnia to reject contract claims. You're probably familiar with the A&D decision that more recently did not. Since I wrote it, yeah. That would be a good reason to be familiar with it. But yes, the application of Omnia has not always been easily discerned when it should be applied. I'd submit that in the A&D decision, as we explained in our briefs, there was no pervasive regulation by the federal government of auto dealerships to the extent auto dealerships were regulated at all. It was a state matter, and so it was at least outside the area of some sort of pervasive regulation. So this case is at least distinguishable on that basis from A&D. Your Honors, if you have no further questions, we would ask that the decision of the trial court below be affirmed. Okay. Thank you, Mr. Harrington. Your Honors, just hold on one second. I'm sorry. Okay. Thank you. Go ahead. Okay. Just two quick points for rebuttal here, and I'll try to stay within the two minutes. One is, again, there was no authority when the government was acting as conservator under SASA to repudiate contracts. If you look at 12 U.S.C. 4617D3, that's one of the HERA amendments, which specifically gives the government that power to repudiate contracts. It knew how to do it under HERA. It didn't do it under SASA. When you say repudiate a contract, what do you mean? To terminate a contract. And interestingly, Your Honor— Wait. The contract wasn't terminated here. The contract was terminated. No. He was terminated from his position. Right. His employment agreement was effectively ended. But he had—that gets to the question we've been discussing. The contract wasn't terminated. Mr. Peisel was terminated from his position, and Freddie Mac was told, don't honor the provisions in the contract relating to termination benefits when there's a termination without cause. Right. What I would say, Your Honor, is it was an employment agreement that guaranteed— Which was breached. Which was breached, and it was breached because he was terminated without being paid his termination benefits. He was an at-will employee. He was an at-will employee. That's correct. In terms of the argument about the breach of contract claim, as I recall, this was raised below. The lower court actually addresses this, and it's in the record at A11, and specifically finds that a breach of contract claim here against Freddie Mac would not preclude a takings claim against the government. And looking back at some of the cases in our lower court briefs, again, the cases that talk about that specifically say, if the government is acting as the counterparty, there's no takings claim. But if the government is a third party, is acting as sovereign, there is a takings claim even if there's a breach of contract claim. Your Honor's A&D decision. It's a perfect example from the Fed Circuit just in 2014. There, the government caused the car dealerships to terminate franchise agreements. You had Chrysler, and you had another car dealership company that had to terminate franchise agreements to receive TARP assistance. There, the franchisees could have sued the car companies easily, but they sued the government for a taking because it was the government's order that actually led to the breach of contract claim. In that case, Your Honor, a motion to dismiss was denied and allowed the parties to go forward on the takings claim. And there's no discussion whatsoever about, is there a separate breach claim against the car companies that precludes the takings claim. It's not in that case. It's also in the government talked about Omnia. Omnia is another example. There, the plaintiff had a breach of contract claim against Allegheny, the third party, but instead it pursued a takings claim against the government who ordered the third party to act as it acted. Omnia does not say anything about, because there's a separate breach of contract claim,  So there we have the Supreme Court in Omnia. We have this court, A&D, allowing takings claims to go forward even though there's a breach of contract claim against a third party where the government causes that third party to breach the contract. I think we're out of time for the moment, but we will give you the opportunity to submit supplemental briefing, 15 double-spaced pages each side in three weeks, and we'll issue an order to that effect. Does that give you enough time to do what you need to do? I think so, Your Honor. I think that should be sufficient, and I appreciate the opportunity to brief the issue. Okay. Well, we'll do that then, and we thank both counsel the case is submitted, and that concludes our session. Thank you very much. Thank you.